UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ERIC C. WOLF, | CIVIL NO. 08-818 (PJS/JSM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| DAVID JOHNSON, | |
| Defendant. | |

JANIE S. MAYERON, United States Magistrate Judge.

The above matter came before the undersigned United States Magistrate Judge upon Federal Defendant's Motion to Dismiss, Alternatively for Summary Judgment [Docket No. 16]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(a).  For the reasons discussed below,

IT IS RECOMMENDED THAT:

1. Federal Defendant's Motion to Dismiss, Alternatively for Summary Judgment [Docket No. 16] be GRANTED; and

2. Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

1

**I.     BACKGROUND**

At the time plaintiff Eric C. Wolf ("Wolf") commenced this action, he was a prisoner at the Federal Correctional Center in Waseca, Minnesota ("FCI-Waseca"). See Complaint, ¶2.[1]  Defendant David Johnson ("Johnson") is a Maintenance Work Supervisor at FCI Waseca.  Declaration of David Johnson, ¶1 ("Johnson Decl."). Wolf brought this Bivens-type action[2] against Johnson in his individual capacity.[3]

Wolf alleged that Johnson was his work supervisor who forced him, under threat of segregation, to sign work-related documents, which Wolf believed would cause him to lose his Veterans Administration ("VA") benefits.  Complaint, ¶¶ 5, 6.  Nevertheless,

---

[1]     Wolf filed a handwritten form Complaint, and also a typewritten Complaint. Unless otherwise noted, the citations to the Complaint are to the typewritten Complaint. Wolf signed both handwritten and typed Complaint, stating "I declare under penalty of perjury that these facts are true."  Thus, these pleadings constitute a sworn declaration pursuant to 28 U.S.C. § 1746 ("Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, …").

[2]     Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[3]     Wolf's handwritten Complaint was titled "Civil Rights Complaint Pursuant to Title 28, U.S.C., Section 1331 (A Bivens type action)."  In the first paragraph of the typewritten Complaint, Johnson asserted this was an action for damages and injunctive relief under 42 U.S.C. § 1983.  Complaint, Preliminary Statement.  However, Wolf then alleged that he was suing Johnson in his individual capacity and that he was acting under color of federal law. Complaint, ¶¶ 3, 4.  "A Bivens claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights."  Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998) (citation omitted).  A 1983 claim is brought against individuals acting under color of state law.  42 U.S.C. § 1983.  Therefore, this action is appropriately brought as a Bivens action, and the Court will treat it as such.

2

Wolf signed the documents, claiming he did so under duress. Id., ¶ 7. Wolf further alleged Johnson continued to harass and ultimately sent him to the segregated housing unit ("SHU"). Id., ¶ 8. Upon release from segregation, Wolf returned to his job under Johnson where he claimed Johnson refused his pay and took away his work bench. Id., ¶ 9; Handwritten Complaint, p. 3.

Wolf claimed that Johnson's actions constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution, and also violated the law of the United States as a criminal act of extortion. Complaint, ¶10. Wolf requested Johnson or his agent "[i]mmediately remove [Wolf] from the job in the Facilities dept. and remove Mr. Johnson as [his] supervisor," and "to place [Wolf] on permanent "No Work Status" so as not to jeopardize [Wolf's] VA support for his family. Id., p. 3. Wolf also sought an award of $20,000 in compensatory damages against Johnson for "emotional and mental injuries sustained as a result of the Defendant's threats," and $20,000.00 in punitive damages against Johnson, and other relief "as it may appear that Plaintiff is entitled." Id., p. 4.

Wolf attached a number of exhibits, and a list and narrative description of the exhibits ("Exhibit List"), to his Complaint. Wolf described Exhibits A, B, and C as evidence that he had filed a tort claim and had received permission under the Federal Tort Claims Act ("FTCA") to file suit in U.S. District Court. Exhibit List, p. 1. Exhibit A is letter dated September 14, 2007, from Attorney Dennis Bitz of the Federal Bureau of Prisons, Federal Medical Center, Rochester, Minnesota to Wolf, explaining that if Wolf wished to allege new facts in his FTCA claim against Johnson, Wolf must file an amended claim with the Regional Counsel. Exhibit B is a letter dated August 8, 2007, from the Regional Counsel of the Federal Bureau of Prisons ("BOP") to Wolf notifying

3

him that the BOP was in receipt of his FTCA claim. Exhibit C is a letter dated December 20, 2007, from the Regional Counsel of the BOP informing Wolf that his FTCA claim was denied, and he may file suit in an appropriate U.S. District Court.

Wolf described Exhibit D as evidence that he had made an attempt to informally resolve his issue with the Warden, but he was denied any remedy. Exhibit List, p. 1. Exhibit D is made up of two documents. The first document is an "Inmate Request to Staff" form from Wolf to Warden Carol Holinka dated May 30, 2007, stating Johnson had threatened him with segregation if he did not sign paperwork, and that if anyone ever forced him to sign something he did not wish to sign, he would file charges of extortion against that staff member. Complaint, Ex. D. The second document is Warden Holinka's response to Wolf's Inmate Request dated June 15, 2007, stating that Johnson had "merely advised you of the consequences for refusing to work. You have the right to refuse to sign the job orientation form, but doing so will likely result in disciplinary action." Id.

According to Wolf, Exhibit E is a copy of the Initial Job Orientation sheets that he claims he was "forced to sign by threats from the Defendant David Johnson." Exhibit List, p. 1. Exhibit E is made up of several documents. The first document is a list of new rules of conduct for Facility inmate details, signed by Wolf on May 30, 2007, with the notation "signed under duress." Complaint, Ex. E. The second document is a form entitled "Position Description and Standard" describing the job and standards for the position "Detail General Maintenance" in the Facilities Department. Id. It is signed by Wolf on May 30, 2007, with the notation "signed under duress." Id. The third document is a FCI-Waseca Initial Job Orientation form, initialed and signed by Wolf on May 30, 2007, with the notation "signed under duress." Id. The final document is a two-page

4

"United States Government Memorandum" regarding "fall protection, ladder safety" signed by Wolf. Id.

According to Wolf, Exhibit F "[c]learly states that the Plaintiff is placed on Medical Restrictions due to injuries. And further shows Plaintiff's injuries." Exhibit List, p. 1. Exhibit F is an "FCI Waseca Health Services Department" form dated May 23, 2007, advising Wolf that his restrictions were changed to reflect that "1) there should be no prolonged standing and 2) no lifting over 15#." Complaint, Ex. F.

Wolf described Exhibit G as showing that upon being placed at FCI-Waseca, he refused to sign any contract regarding work because it would cause him to lose his compensation from the VA for the injuries he suffered in the military, and that he was threatened with segregation until he signed. Exhibit List, p. 1. Exhibit G is a BOP "Uniform Basic Safety Regulations" form signed by Wolf on March 27, 2007, also containing the crossed-out words "inmate refused." Complaint, Ex. G.

Exhibits H and I were offered by Wolf to prove that he is a 100% disabled veteran, and if he were to be employed, it would result in a decrease in his rate of service connected disability. Exhibit List, pp. 1-2. Exhibit H is a letter dated January 30, 2004, from the VA to Wolf stating that Wolf is receiving 100% disability compensation, and informing him that he must notify the VA office if he begins working or becomes self-employed. Complaint, Ex. H. Exhibit I is a similar letter dated February 1, 2000. Complaint, Ex. I.

Exhibit J was offered to show the injuries for which Wolf receives compensation from the VA, and injuries Wolf "received since his incarceration with the Federal Bureau of Prisons." Exhibit List, p. 2. Exhibit J is a medical record progress note dated June 13, 2002, from a nurse at the VA hospital in Lexington, KY, stating that: 1) Wolf has

medical conditions of degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, osteoarthritis, and hyperlipidema; 2) Wolf is on the medications: Simvastatin, Salsalate, Ranitidine, and Amitriptyline; and 3) Wolf needs a warm environment to avoid exacerbation of his conditions. Complaint, Ex. J. There is a handwritten note on the form, initialed by Wolf, describing injuries that "were acquired due to 6 years of forced labor in the BOP." Id.

Exhibit K was offered to show that Johnson retaliated against Wolf when Wolf filed a tort claim against him, and that the Associate Warden refused Wolf's plea to stop the retaliation. Exhibit List, p. 2. Exhibit K is comprised of two documents. The first document is an "Inmate Request to Staff" from Wolf to Associate Warden Dubbs, dated August 31, 2007, in which Wolf alleged that Johnson retaliated against him by hiding his work bench in violation of Wolf's medical restrictions against prolonged standing, and requesting replacement of the bench and the retaliation stop. Complaint, Ex. K. The second document is Associate Warden Dubbs' response to Wolf's Inmate Request dated September 17, 2007, in which Associate Warden Dubbs denied Wolf's request to have the bench returned and stated that there was no indication of retaliation on the part of Johnson. Id.

Finally, Exhibits L-S are copies of Wolf's work performance sheets for May through November 2007 offered by Wolf to show retaliation by Johnson, and that Wolf was not paid for his labor, "thereby Constituting Slave Labor." Exhibit List, p. 2.[4]

---

[4] Also attached to Wolf's Complaint were two copies of a request by Wolf dated October 25, 2007, to Ms. Hiller, the Case Manager for C Unit, requesting copies of the initial job orientation forms he "was ordered to sign when [he] was placed in Facilities", and a Response to Administrative Remedy No. 457358-A1 signed by Harrel Watts, Administrator, National Inmate Appeals, dated January 3, 2008, responding to a complaint by Wolf regarding an order by Recreation staff that he work after he had been on sick call.

6

In lieu of an answer, Johnson brought a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the alternative, a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  See Federal Defendant's Memorandum in Support of Motion to Dismiss, Alternatively for Summary Judgment ("Def's Mem.") [Docket No. 18].  Johnson submitted that his case should be dismissed based on the following grounds: qualified immunity for failure to establish a constitutional violation; Wolf failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e); Wolf failed to allege a physical injury, as required by the PLRA in order to recover money damages; Wolf failed to allege facts to establish retaliation; Wolf's claims are not actionable under the Federal Tort Claims Act; and Wolf failed to allege facts to support a claim for punitive damages.  In support of these arguments, Johnson submitted a sworn declaration and attached exhibits.

Wolf filed a response to Johnson's motion to dismiss, alternatively for summary judgment with exhibits attached and Johnson filed a short Reply.  See Plaintiff's Opposition to Defendant's Motion to Dismiss, Alternatively for Summary Judgment ("Pltf's Brief") [Docket No. 22]; Federal Defendant's Rely Memorandum ("Def's Reply") [Docket No. 24].

Since commencement of this action and submission of Johnson's motion, the Court has learned that Wolf was released from prison on September 3, 2008.  See BOP inmate locater website at www.bop.gov.[5]

The Court finds that it is not necessary to address Johnson's various substantive arguments because, for the reasons articulated below, Wolf has failed to exhaust his

---

[5] Using Wolf's inmate registration number, the link can be found at
http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=07252-032&x=61&y=13

administrative remedies as required by the PLRA, and his suit must be dismissed on that basis.

## II.     STANDARD OF REVIEW

### A.     Rule 12(b)(6) Motion to Dismiss

A civil complaint will be dismissed upon motion by a defendant, if the plaintiff has failed to plead an actionable claim for relief against that defendant. Fed. R. Civ. P. 12(b)(6). To state an actionable claim for relief, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendants under some established legal theory.

> At this stage of the litigation, we accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief. Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); Fed.R.Civ.P. 8(a)(2). The plaintiffs need not provide specific facts in support of their allegations, Erickson v. Pardus, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), but they must include sufficient factual information to provide the "grounds" on which the claim rests, and to raise a right to relief above a speculative level. Twombly, 127 S.Ct. at 1964-65 & n. 3. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) ("the complaint must allege facts, which if true, state a claim as a matter of law").

Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). Thus, to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985) ("[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions").

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss. However, this does not mean that only the complaint itself may

be reviewed. As the court noted in Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir.1999):

> When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir.), cert. denied, __U.S.__, No.98-1848, 1999 WL 319349 (U.S. June 24, 1999), as well as materials that are 'necessarily embraced by the pleadings.' Piper Jaffray Cos. v. National Union Fire Ins. Co., 967 F. Supp. 1146, 1152 (D. Minn. 1997). See also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d §1357, at 199 (1990)(court may consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint').

Therefore, documents attached to the complaint may be reviewed on a motion to dismiss, since they are part of the pleading.[6]

### B. Summary Judgment

Summary judgment is proper when, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party bears the burden of showing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the moving party carries its burden, the nonmoving party must point to specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256. The non-moving party must "substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere

---

[6] Rule 10(c) of the Federal Rules of Civil Procedure provides: "**(c) Adoption by Reference; Exhibits.** . . . A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

9

speculation, conjecture, or fantasy." Wilson v. Int'l. Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

Here, both parties have submitted materials outside of the pleadings for consideration by the Court. Therefore, this Court converts Johnson's motion to dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); see also McAuley v. Federal Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007) ("We have previously held that 'Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.' Such 'matters outside the pleadings' include both statements of counsel at oral argument raising new facts not alleged in the pleadings, and 'any written or oral evidence in support of or in opposition to the pleading that provide some substantiation for and does not merely reiterate what is said in the pleadings.'" Gibb v. Scott, 958 F.2d 814, 816 (1992) (quoting 5C Wright & Miller, Federal Practice and Procedure § 1366)) (internal citations omitted)").

### III. DISCUSSION

Johnson asserted that Wolf's Bivens claims should be dismissed as a matter of law, as Wolf failed to fully exhaust his administrative remedies. This Court agrees.

Section 1997e(a), which was enacted in 1996 as part of the Prison Litigation Reform Act of 1995, ("the PLRA"), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

> facility until such administrative remedies as are available are exhausted.

This statute requires that prisoners must exhaust all of their available administrative remedies before they can bring a civil rights action based on the conditions of their imprisonment.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 524, 532 (2002), and regardless of the nature of the claim or the relief the prisoner is seeking.  See Booth v. Churner, 532 U.S. 731, 741 (2001).  Exhaustion under the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) (emphasis added).  In other words, "proper exhaustion" of administrative remedies, "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. at 90 (quotation and marks omitted).  Drawing on the concepts of exhaustion in the context of habeas corpus cases, Woodford stands for the proposition that the exhaustion requirement may not be satisfied by filing an untimely grievance or otherwise procedurally defective appeal.  See Woodford, 548 U.S. at 92-93.

As to the purpose of this requirement, the Eighth Circuit has explained:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the

11

> internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Johnson v. Jones, 340 F.3d 624, 626-27 (8th Cir. 2003); see also Woodford, 548 U.S. at 89 ("Exhaustion of administrative remedies serves two main purposes. First, exhaustion protects 'administrative agency authority.' Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.' Second, exhaustion promotes efficiency.") (quotation and citations omitted); Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998) (quoting 141 Cong. Rec. H1472-06, *H1480 (daily ed. Feb. 9, 1995)) ("Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court.'"). However, under the PLRA, failure to exhaust the available administrative remedies is an affirmative defense, with the burden of proof falling on defendant, and not a matter of subject matter jurisdiction. Lenz v. Wade, 490 F.3d 991, 993 n. 2 (8th Cir. 2007) (citing Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 919-922, 166 L.Ed.2d 798 (2007); see also Nixon v. Sanders, No. 06-1013, 2007 WL 2349344 at *1 (8th Cir. Aug. 17, 2007).

If it is established that exhaustion of administrative remedies did not occur prior to filing of the suit, both the Supreme Court and Eighth Circuit have made it clear that dismissal is mandatory. Jones, 549 U.S. at 211 ("[t]here is no question that exhaustion [of administrative remedies] is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); Woodford, 548 U.S. at 85 ("[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Johnson, 340 F.3d at 627-28 (finding that if a prisoner does not exhaust his administrative remedies before filing a

complaint in federal court, "dismissal is mandatory," and even if a prisoner subsequently satisfies the exhaustion requirement while his action is still pending, the case still must be dismissed).

The BOP provides a comprehensive and multi-tier administrative remedy procedure for federal inmates seeking to address grievances relating to their confinement, codified at Title 28 C.F.R. §§ 542.10 - 542.18. Under the BOP's Administrative Remedy Program, the inmate must first present his concern informally to an appropriate staff member, who must attempt to resolve the concern. See 28 C.F.R. § 542.13(a). If the issue cannot be resolved informally, the inmate must then file an Administrative Remedy Request by submitting a BP-9 form to the staff member designated by the BOP, generally the warden. See 28 C.F.R. §§ 542.14(a). The deadline for submitting the informal resolution and submission of the Administrative Remedy Request is "20 calendar days following the date on which the basis for the Request occurred." Id. If dissatisfied with the warden's response, the inmate may appeal the response to the Regional Director by filing a BP-10 form within 20 days of the date the warden signs the response. See 28 C.F.R. §542.15(a). If dissatisfied with the Regional Director's response, the inmate must file an appeal with the Office of General Counsel by submitting a BP-11 form within 30 days of the Regional Director's response. Id. At that point, the administrative appeal process is completed and suit can then be brought. Id. Subject to certain exceptions, BOP regulations dictate that the warden must respond to the inmate's initial grievance within 20 calendar days; the Regional Director must respond within 30 calendar days; and the General Counsel must respond within 40 calendar days. See 28 C.F.R. § 542.18.

Important to this case, the BOP's Administrative Remedy Program not only applies to all inmates in institutions operated by the BOP, but also to "former inmates for issues that arose during their confinement." 28 C.F.R. §§ 542.10(b); see also, Covell v. Scibana, 21 Fed.Appx. 291, 293 (6th Cir. 2001) ("Indeed, the fact that Covell is not incarcerated [at the time of court's decision] is of no moment in this context as the applicable regulations state that the Administrative Remedy Program applies to former inmates for issues that arose during their confinement. 28 C.F.R. § 542.10.").

In support of his argument that Wolf failed to exhaust his administrative remedies, Johnson maintained that Wolf had never filed any grievances or appeals pursuant to the Administrative Remedy Program against him or Wolf's work in the Facilities Department, and attached as support Administrative Remedy Data for Wolf, along with two Inmate Request to Staff Forms and the responses to the complaints identified in these forms. Johnson Decl., ¶11, Attachments E, F and H. In opposition, Wolf asserted that he filed several administrative remedies on issues concerning his request that he not be forced to work, including a request for immediate removal from his work assignment at the facilities department. Pltf's Brief, pp. 3-4 citing to Exhibit D attached to his brief (Response to Administrative Remedy No. 452693-R1 dated July 11, 2007 from Regional Director Michael Nalley). Johnson countered that Administrative Remedy No. 452693-R1 (Exhibit D attached to Wolf's brief) related to a complaint against staff member H. Gangruth, a recreational specialist who order Wolf to work, and not Johnson. Def's Reply, pp. 11-12.

Upon review of all evidence and exhibits offered by the parties, the Court finds that Wolf did not follow the BOP's multi-tier administrative remedy process, and therefore, did not exhaust the administrative remedies concerning the claims alleged in

14

his Complaint – that Johnson forced him to sign work-related documents upon threat of being placed in segregation, or that Johnson retaliated against him for bringing a claim under the FTCA by taking away his bench or refusing to pay him for work. What the undisputed evidence shows is that Wolf submitted two different Inmate Request to Staff forms to the Warden and Associate Warden regarding Johnson, and that Wolf did nothing more to appeal their responses. Specifically, on May 30, 2007, Wolf filed an "Inmate Request to Staff" directed to Warden Holinka stating that Johnson had threatened Wolf that if he did not sign certain paperwork relating to his training and orientation, he would be placed in segregation. Complaint, Ex. D; Johnson Decl., Attachment H. After indicating that such conduct was a violation of his rights and against the law, Wolf stated "that if anyone forces me to sign my signature to something I don't want to, I will file charges of extortion against that staff member. Try me." Id. On June 15, 2007, Warden Holinka responded to this Inmate Request, finding no evidence that Johnson had threatened or forced Wolf to sign anything, and stating that Johnson had "merely advised you of the consequences for refusing to work. You have the right to refuse to sign the job orientation form, but doing so will likely result in disciplinary action." Id. Wolf never did file charges against Johnson for requiring him to sign certain paperwork, nor did he ever appeal Holinka's response.

On August 31, 2007, Wolf submitted another "Inmate Request to Staff" directed to Associate Warden Dubbs in which he asserted that due to his filing of his tort claim against Johnson, Johnson had retaliated against Wolf by hiding the bench that Wolf used during work hours because of his medical restrictions. Complaint, Ex. K; Johnson Decl., Attachment E. Wolf asked for Associate Warden Dubbs' assistance in seeing that the bench was returned to Wolf and to stop the retaliation. Id. Associate Warden

15

Dubbs responded to this Request on September 17, 2007, stating there was no indication of retaliation and denied Wolf's request for the return of the bench. Id. Wolf never appealed this response.

Even assuming that these Inmate Requests met the requirements of 28 C.F.R. §§ 542.13(a) and 542.14(a), (c)(4),[7] Wolf did not appeal these responses from the Warden or Associate Warden to the Regional Director or the Office of the General Counsel as dictated by 28 C.F.R. § 542.15(a).[8] Therefore, the Court concludes that none of Wolf's claims against Johnson have been exhausted under the BOP's administrative remedy program.

Having determined that Wolf has not exhausted all available administrative remedies as to any of his constitutional claims against Johnson, this action must be dismissed. The only remaining issue for this Court to consider is whether the action should be dismissed with or without prejudice. Prior to Woodford, when a case was dismissed pursuant to 42 U.S.C. § 1997e(a) because of the inmate's failure to exhaust administrative remedies, it was dismissed without prejudice. See Harris v. Kemna, 155 Fed.Appx. 941 (8th Cir. 2005) (unpublished opinion); Nash v. Lappin, 172 Fed.Appx. 702, 703 (8th Cir. 2006) (unpublished opinion). Based upon their reliance upon Calico

---

[7] This Court does not believe that Wolf's Inmate Requests meet the requirement's of the BOP's Administrative Remedy Program as set forth in 28 C.F.R. §§ 542.13, and 542.14. First, no informal resolution was submitted to staff as dictated by 28 C.F.R. § 542.13(a). Second, no initial filing on the appropriate form (BP-9) was submitted as set forth in § 542.14(a) and (c). Examples of Wolf's submission of such forms on other grievances made by Wolf are found in Attachment F to the Johnson Declaration. Nevertheless, for the purpose of this Court's analysis and giving Wolf every benefit of the doubt, it has treated these Inmate Requests as the first step of the administrative remedy process.

[8] Wolf did file a FTCA claim against Johnson, (see Complaint, Exhibits A, B, and C), but filing a claim for relief under FTCA does not exhaust administrative remedies for a Bivens action because the PLRA requires exhaustion using the particular administrative review process governing the inmate. Jones, 549 U.S. at 218.

16

Trailer Mfg. Co. v. Ins. Co. of N. Am., 155 F.3d 976, 978 (1998), presumably the assumption underlying Harris and Nash was that operative administrative remedies were still available to the inmate to exhaust.[9] See 42 U.S.C. §1997(e) (prisoner may not bring action under federal law with respect to prison conditions "until such administrative remedies as are available are exhausted") (emphasis added).

Here, because the time has run on Wolf's ability to grieve his complaints against Johnson, Woodford makes clear that the remedies are no longer available. The BOP's Administrative Remedy Program applies to all BOP inmates and former inmates for issues that arose during their confinement. See 28 C.F.R. § 542.10(b). Any attempt by Wolf to pursue his administrative remedies following dismissal of this suit, are procedurally barred as the various time periods for initiating a claim and appealing a denial have long since past. See 28 C.F.R. §§ 542.14(a) (the deadline for completion of informal resolution and submission of the Administrative Remedy Request is "20 calendar days following the date on which the basis for the Request occurred."); 28 C.F.R. §542.15(a) (If dissatisfied with the warden's response, the inmate may appeal to the Regional Director by filing a BP-10 form within 20 days of the date the warden signs the response, and an appeal of that decision to the Office of General Counsel must take place within 30 days of the Regional Director's response.) Thus, because Wolf can no longer exhaust his claims, he has procedurally defaulted on them and his suit is precluded forever and must be dismissed with prejudice. See Woodford, 548 U.S. at 92-93; Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005) (noting the "policies

---

[9] In Calico Trailer, the Eighth Circuit stated "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." 155 F.3d at 978. Finding that Calico had made no showing "that its unexhausted remedies [were] unavailable or would be futile", the court dismissed the case without prejudice. Id.

favoring exhaustion," court held that the PLRA contains a procedural default component where an inmate fails to avail himself in a timely fashion of the institution's administrative process); Berry v. Kerik, 366 F.3d 85, 88 (2nd Cir. 2004) ("failure to pursue administrative remedies while they were available precluded [the plaintiff's] federal lawsuits, and they were properly dismissed with prejudice."); Wardrick v. Marberry, NO. CIV.A. 06-216-ERIE, 2007 WL 4180693 at *6 (W.D. Pa. Nov. 20, 2007) ("Plaintiff has failed to exhaust his administrative remedies. In addition, Plaintiff is foreclosed from re-submitting his appeal to the General Counsel's Office because he failed to do so within the required time period. As a result, Plaintiff has procedurally defaulted on his claim and this case should be dismissed"); see also Carini v. Austin, 2008 WL 151555 (S.D.N.Y. Jan. 14, 2008) (dismissed case with prejudice by former inmate where he had ample opportunity to exhaust remedies before he was released).

## IV.  RECOMMENDATION

For the reasons set forth above, and based on all the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1. Defendant's Motion to Dismiss, Alternatively for Summary Judgment [Docket No. 16] be GRANTED;

2. Plaintiff's Complaint be DISMISSED WITH PREJUDICE for failure to exhaust pursuant to 42 U.S.C. §1997e(a).

DATED:   February 10, 2009

*S/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

18

**NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 27, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.